UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

SHONTAE EVERETT,

           **Plaintiff,**

v.                                                                  **No.: 2:13-cv-21**

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF
SOCIAL SECURITY,

           **Defendant.**

## REPORT AND RECOMMENDATIONS

The Plaintiff, Shontae Everett ("Ms. Everett"), brought this action under Sections 216(i), 223(d) and 1614(a)(3)(A) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Acting Commissioner of Social Security ("Acting Commissioner") that denied her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Act.

The parties' Motions for Summary Judgment were referred for disposition to the undersigned United States Magistrate Judge in accordance with 28 U.S.C. §§ 636(b)(1)(B) and (C), Federal Rule of Civil Procedure 72(b), Local Rule 72, and the April 2, 2002 Standing Order on Assignment of Certain Matters to United States Magistrate Judges. For the following reasons, the undersigned **RECOMMENDS** the Acting Commissioner's Motion for Summary Judgment, ECF No. 12, be **GRANTED**, Ms. Everett's Motion for Summary Judgment, ECF No. 10 be **DENIED**, the final decision of the Acting Commissioner be **AFFIRMED**, and this matter be **DISMISSED WITH PREJUDICE.**

## I. <u>PROCEDURAL BACKGROUND</u>

On September 11, 2009, Ms. Everett applied for DIB and SSI, claiming a disability onset date of March 25, 2010. R. 20.[1] Ms. Everett's date last insured ("DLI") was June 30, 2013. R. 20. Therefore, she was required to establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits. R. 20. Ms. Everett's DIB and SSI were initially denied on July 1, 2010, R. 135-140, and denied again after reconsideration on November 17, 2010. R. 145-151. Ms. Everett requested a hearing before an Administrative Law Judge ("ALJ") of the Social Security Administration ("SSA") on December 2, 2010, R. 156-157, held on September 1, 2011 in Norfolk, Virginia. R. 36-57. The ALJ denied Ms. Everett's applications for DIB and SSI and issued a decision to this effect on September 15, 2011. R. 17. Ms. Everett requested review of the ALJ's decision by the Appeals Council on October 14, 2011. R. 14. The Appeals Council denied review on November 15, 2011, R. 1, rendering the ALJ's decision "the final decision" of the Acting Commissioner pursuant to 42 U.S.C. § 405(g). *See* 20 C.F.R. §§ 404.981, 416.1481. After exhausting her administrative remedies, Ms. Everett filed her complaint for judicial review of the Acting Commissioner's final decision on January 11, 2013. ECF No. 10. The Acting Commissioner filed an Answer on March 25, 2013, ECF No. 6. Because both parties have filed motions for summary judgment, the matter is now ripe for adjudication.

## II. <u>STANDARD OF REVIEW</u>

Judicial review of a final decision regarding disability benefits under the Act, 42 U.S.C. § 301 *et seq.*, is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *see* 42 U.S.C. § 405(g). This Court's review is limited to determining whether the findings of the

---

[1] "R." refers to the certified administrative record that was filed under seal on March 25, 2013, pursuant to Local Civil Rules 5(B) and 7(C)(1).

Commissioner are supported by substantial evidence and whether the proper legal standard was applied. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). The Commissioner may resolve conflicts or inconsistencies in the evidence, which the Court is to review for clear error or lack of substantial evidentiary support. *Craig v. Chater*, 76 F.3d 585 (4th Cir. 1996). If the Commissioner's conclusion is reasonable and supported by substantial evidence, the Court is to affirm the Commissioner's final decision. *Laws v. Celebrezze*, 368 F.2d 640 (4th Cir. 1966). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Id.* at 642.

It is the duty of the Commissioner to make findings of fact and resolve conflicts of evidence. *Hays*, 907 F.2d at 1453 (citing *King v. Califano*, 599 F.2d 497, 599 (4th Cir. 1979)). The Court does not conduct a *de novo* review of disability determinations. *King*, 599 F.2d at 599. The Court does not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the Secretary." *Craig*, 76 F.3d at 589 (citing *Hays*, 907 F.2d at 1456). The denial of benefits will be reversed only if no reasonable mind could accept the record as adequate to support the determination. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

### III. ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

The ALJ employs a five-step sequential process in every Social Security disability claim analysis to determine the claimant's eligibility. The Court reviews the record and examines the five-step analysis to determine whether the correct legal standards were applied and whether the resulting decision of the Acting Commissioner is supported by substantial evidence in the record. 20 C.F.R. §§ 404.1520 and 416.920.

In accordance with the five-step sequential analysis set forth at 20 C.F.R. §§ 404.1520, *see Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981), the ALJ made the following findings of fact and conclusions of law: First, Ms. Everett met the insured status requirements of the Act through June 30, 2013, R. 22, and had not engaged in substantial gainful activity ("SGA") since March 25, 2010, the alleged disability onset date. R. 22. Second, the ALJ also found that Ms. Everett's peripheral arterial disease (right lower extremity), right peroneal neuropathy, right knee disorder, obesity, attention deficit hyperactivity disorder, mood disorder, personality disorder, and schizophrenia constituted severe impairments. R. 22. However, under the third step, the ALJ determined that Ms. Everett did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. R. 23. Fourth, the ALJ also determined Ms. Everett had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a), 416.967(a), provided she can stand and/or walk for no more than two hours in an eight-hour workday. R. 25. Ms. Everett also cannot crouch or climb; can perform other postural activities no more than occasionally; cannot be exposed to heights or hazards; can only have occasional contact with co-workers, supervisors, and/or the public due to moderate limitations in social functioning; and can only do simple, routine, repetitive, one or two-step tasks due to moderate limitations in concentration, persistence, and/or pace. R. 25-26. Fifth, the ALJ determined Ms. Everett was unable to perform any past relevant work. R. 30. After considering Ms. Everett's age, education, work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Ms. Everett could perform. R. 30. Therefore, the ALJ concluded Ms. Everett has not been disabled as defined in the Act since her alleged disability onset date. R. 31.

## IV. <u>RELEVANT FACTUAL BACKGROUND</u>

In both applications, Ms. Everett, alleged a disability onset date of March 20, 2008. R. 20, 39, 179. At the ALJ hearing, Ms. Everett, through counsel, amended the onset date to March 25, 2010. R. 39, 175, 179. As of that date, Ms. Everett was a thirty-two year old female who received her GED, lived with her five children, and previously worked as a hospital cleaner and housekeeper. R. 41. At the ALJ hearing held on September 1, 2011, Ms. Everett was represented by counsel, and the ALJ took testimony from Ms. Everett and an independent Vocational Expert ("VE"). Ms. Everett provided the following testimony upon examination by the ALJ and her own attorney:

Ms. Everett last worked at the end of 2008 or beginning of 2009 as a housekeeper. R. 41. During this time, she became fearful of her co-workers and began seeing various counselors who prescribed her medicine, which helped but did not completely alleviate her anxiety. R. 42-46. She has not looked for other work since 2008. R. 43.

Ms. Everett lives alone with her five children ages sixteen, twelve, ten, and a set of six year-old twins. R. 40. She is their primary caretaker and responsible for the children. *Id.* Ms. Everett performs normal household chores, with some difficulty, including: the laundry, cooking, sweeping and vacuuming, and grocery shopping. R. 49-51. Her eldest daughter typically washes the dishes, but Ms. Everett will do them if necessary. *Id.* ("If I have to, though, I'll try to do them."). The rest of the housework is split between Ms. Everett and her children. R. 50. All of her children are in school, and during the day Ms. Everett typically reads or studies typing on the computer. R. 51.

When asked to explain her disabling symptoms, Ms. Everett described a combination of mental and physical symptoms. Specifically, she fears her co-workers, R. 41-42, and generally

isolates herself: "I just try not to say anything to anybody I don't know. If it's not my children or my mother, I just try not to -- ." R. 47. Ms. Everett once tried to overdose on the sleeping pill, Trazodone, but "spit them all out because one of my children happened to come downstairs." R. 26, 47.

Ms. Everett also described physically disabling symptoms regarding her right leg. However, she stated her knee was "doing a little better since the surgery, the last surgery, about 60 percent better." R. 48. Despite describing feeling better, Ms. Everett still described pain in her right leg due to nerve damage, requiring her to "take a break about every so – every couple of minutes or so." R. 48. She can walk "about a block or two" and stand "about 30 minutes" before needing to sit, but she was able to "sit all right. I just have to prop my knee sometimes." R. 48-49. Ultimately, Ms. Everett stated she spends, "Most of the day just tending to my children." R. 50.

Ms. Everett's severe impairments of right peroneal neuropathy and obesity were found after the state agency medical opinions were issued. R. 27-29. Therefore, the two state agency medical opinions did not consider these severe impairments in determining their medical opinions. R. 101, 134. Even though the state agency medical opinions were already submitted, the ALJ still accounted for Ms. Everett's right peroneal neuropathy and obesity in his decision, based on objective medical evidence and her subjective testimony. R. 23-24, 27-29. The ALJ found that Ms. Everett's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Ms. Everett's statements concerning the intensity, persistence and limiting effects of these symptoms were not credible to the extent they were inconsistent with her RFC assessment. R. 27. Specifically, the ALJ relied on, and summarized, medical reports following her May 3, 2010 surgery and subsequent follow up appointments,

which were found to have improved her condition despite Ms. Everett's noncompliance with treatment recommendations. R. 27 (citing R. 370-386, 412-424, 454-463). Further, medical evidence in the record shows Ms. Everett was no longer experiencing problems with her peripheral arterial disease following her bypass surgery in 2009. R. 28 (citing R. 392-411, 433-445). Regarding Ms. Everett's subsequent right peroneal neuropathy impairment, a severe impairment found after the state agency medical opinions were issued, objective medical evidence still indicates the condition is moderate in nature and her physical examinations show only slight tenderness with intact strength and range of motion in her ankle. R. 28.

The ALJ also found that Ms. Everett's statements regarding her mental impairments are also inconsistent with and not supported by objective medical evidence in the record. R. 29. Treatment notes indicate her condition has been stable. R. 29. Ms. Everett testified she has not been hospitalized in the last six years and only recently was prescribed Lithium and Wellbutrin. R. 29, 45, 46. The ALJ did consider her daily activities, as permitted by SSR 96-7p, which proved to not be as limiting as expected based on Ms. Everett's testimony. R. 29. She is the primary caretaker for five children, which can be physically and emotionally demanding and requires completion of a variety of household chores. R. 29. Therefore, the ALJ determined Ms. Everett's statements only partially credible because of the inconsistencies with objective medical evidence in the record. R. 27.

Ms. Everett, by counsel, filed a Motion for Summary Judgment and a memorandum in support of her motion on April 25, 2013. The Commissioner filed a Motion for Summary Judgment and a memorandum in support of the motion on May 24, 2013. In her Motion, Ms. Everett raises one issue on review: whether the ALJ committed reversible error by not incorporating work restrictions based on limitations from her right peroneal neuropathy in the

RFC determination. Ms. Everett replied to the Commissioner's Motion for Summary Judgment and memorandum in support of her motion on June 11, 2013. The matter is ready for disposition, and for the reasons stated below, the Court would grant the Acting Commissioner's Motion for Summary Judgment.

## V. ANALYSIS

### A. The ALJ properly considered Ms. Everett's limitations from her right peroneal neuropathy and obesity impairments in determining her RFC.

Ms. Everett argues that the ALJ failed to consider her limitations from her right peroneal neuropathy or obesity impairments in the RFC determination. ECF No. 10 at 5, 11. The ALJ concluded Ms. Everett has the RFC to perform sedentary work, provided she can stand and/or walk for no more than two hours in an eight-hour workday; she cannot crouch or climb, and can perform other postural activities no more than occasionally; she cannot be exposed to heights or hazards; she can only have occasional contact with co-workers, supervisors, and/or the public; and she can only do simple, routine, repetitive, one or two-step tasks. R. 25-26. The ALJ did account for Ms. Everett's right peroneal neuropathy and obesity and incorporated them into the RFC restrictions. The RFC determination is composed of: (1) objective medical evidence; and (2) subjective symptoms. *Craig v. Chater*, 76 F. 3d 586, 594 (4th Cir. 1996); *see also* SSR 96-7p, SSR 96-8p. The ALJ specifically considered and evaluated Ms. Everett's right peroneal neuropathy and obesity in his decision. R. 27.

Regarding Ms. Everett's right peroneal neuropathy, objective medical evidence from the nerve conduction study showed her condition was only moderate in nature with slight tenderness in the area. R. 27-28, 457, 467-468. Medical evidence also showed, "she was neurovascularly intact and had full range of motion and full strength in her right ankle." R. 27, 457. The ALJ

also took into account the subjective pain associated with Ms. Everett's right peroneal neuropathy, based on her own testimony. R. 26, 38-54. The ALJ considered Ms. Everett's statements that the nerve damage caused a "shooting pain in her leg if she stands for too long." R. 26, 48. The ALJ also specifically considered and evaluated Ms. Everett's right peroneal neuropathy under listings 1.00 and 11.14. *See* 20 C.F.R. Part 404, Subpart. P, App. 1. R. 23-24. It is not enough that an impairment have the diagnosis of a listed impairment, it must also meet the criteria shown in the listings for that impairment. 20 C.F.R. § 404.1525(d), *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). The ALJ concluded Ms. Everett's impairment did not rise to the level of severity as required by listing 11.14 or listing 1.00. R. 23-24. Listing 11.14 requires peripheral neuropathies with disorganization of motor function as described in 11.04B, despite prescribed treatment. R. 23. Objective medical evidence does not indicate that Ms. Everett's right peroneal neuropathy causes the effects required under listing 11.14. *Id.* Additionally, the ALJ considered Ms. Everett's right peroneal neuropathy under listing 1.00, the Musculoskeletal System, but again, found that it did not meet or medically equal any of these listings. *Id.*

The ALJ also accounted for Ms. Everett's severe impairment of obesity. The ALJ considered objective medical records as of September 2010 stating she is 5' 8.5" (1.74 m) and weighed 270 pounds, R. 435, as well as Ms. Everett's testimony, claiming she is about 5' 9" (69 inches tall) and weighs 280 pounds, R. 40-41, and found she was obese. R. 22, 27. The ALJ considered Ms. Everett's description of her daily activities in her testimony, *see* 96-7p, which are physically demanding and include caring for five children and completing various household chores and errands. R. 29, 40, 49-50. Currently, there is no entry for obesity in the Listing of Impairments. *See* 20 C.F.R. Part 404, Subpart. P, App. 1. However, "[o]besity may be a factor that both 'meets and 'equals' [listing] determinations." SSR 02-1p; *Boston v. Barnhart*, 322 F.

9

Supp. 2d 879, 886 (D. Md. 2004). The ALJ did specifically consider the severity of Ms. Everett's obesity by itself and in conjunction with her other impairments, but found that clinical signs and diagnostic findings show her obesity does not meet or medically equal any entries in the Listing of Impairments. SSR 02-1p, R. 24.

After considering both objective medical evidence in the record and Ms. Everett's subjective symptoms from her testimony, the ALJ concluded she has an RFC to perform sedentary work with additional restrictions. R. 25-26. Therefore, all of Ms. Everett's limitations are accounted for in the RFC finding and restrictions. Finally, Ms. Everett asserts, but fails to demonstrate, harmful error because the ALJ accounted for all limitations and therefore his decision would not have changed. *See* ECF No. 12 at 8 (citing *Shineski v. Sanders*, 556 U.S. 396, 409 (2009)).

Ms. Everett appears to contend that a separate work restriction must be attributed to each impairment determined to be severe. ECF No. 10 at 5, 9. This contention is incorrect. Nothing in the Social Security regulations requires that each impairment found to be severe must have a separate, distinct work restriction associated with it. Instead, "Social Security Administration policy requires the evaluation of the combined impact of impairments on the claimant's ability to function, rather than a separate assessment of the contribution of each impairment to the restriction of function as if each impairment existed alone." Social Security Law and Practice § 41:4. "The ALJ must assess the combined impact of impairments on an individual's ability to function, rather than assess separately the contribution of each impairment to the restriction of function as if each impairment existed alone." 2 Soc. Sec. Disab. Claims Prac. & Proc. § 22:117 (2d ed. 2013). The cases relied on by Ms. Everett confirm that the impairments must be considered in combination, and not separately. *See, e.g., Baker v. Chater*, 957 F. Supp. 75, 81 (D. Md. 1996), citing *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) ("The Commissioner

must consider the combined effect of all of a claimant's impairments and 'not fragmentize them.'"); *Dixon v. Shalala*, 54 F.3d 1019, 1031 (2nd Cir. 1995) (The Commissioner must evaluate the combined effect of a claimant's impairments in ascertaining the claimant's ability to work). The ALJ specifically considered each of Ms. Everett's severe impairments in arriving at her RFC. The work restrictions he arrived at were supported by substantial evidence of the combination of Ms. Everett's severe impairments; a separate and distinct work restriction for each impairment was not required.

Therefore, the ALJ properly accounted for limitations stemming from Ms. Everett's right peroneal neuropathy and obesity in the RFC determination.

### B. The RFC is an administrative determination made by an adjudicator's finding regarding the ability of an individual to perform work-related activities.

Ms. Everett asserts that the ALJ's RFC determination is based entirely on the opinions of the state agency reviewing physicians, and those opinions did not, and could not have, considered the severe impairments found to have accrued after these medical opinions were proffered. Thus, these medical opinions were improperly relied upon to determine the claimant's RFC. ECF No. 10 at 9, 11. This contention is also incorrect. No regulation or case has been cited which requires an ALJ to disregard or discount a medical source opinion which was proffered before all severe impairments become manifested. Under 20 C.F.R. §§ 404.1527(e) and 416.927(e), certain issues are not medical issues regarding the nature and severity of an individual's impairments, but instead are administrative findings that are dispositive to a case, including the determination of an individual's RFC. SSR 96-5p.

> The term *'residual functional capacity assessment'* describes an adjudicator's finding about the ability of an individual to perform work-related activities. The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant non-medical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an

individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence.

*Id.* The ALJ based his findings on all relevant evidence in the record, including opinions from medical sources. R. 29. However, the ALJ did not exclusively rely on the state agency medical opinions and instead, took into account objective medical evidence based on the nerve conduction study, as well as Ms. Everett's own testimony. R. 27-29. Ms. Everett stated she is still able to complete a variety of household chores including grocery shopping, laundry, cooking, and vacuuming or sweeping. R. 50. She is also the primary caretaker for five children, including six year-old twins. R. 29. Lastly, Ms. Everett testified that she "can sit all right," only propping up her knee occasionally. R. 48-49. Therefore, the ALJ recognized and accounted for Ms. Everett's right peroneal neuropathy and obesity in the RFC determination, an administrative finding, despite the fact that certain impairments were listed subsequent to the state agency's medical opinion. As discussed *supra*, the ALJ fully considered Ms. Everett's subsequent impairments and his RFC determination is supported by substantial evidence.

## VI. <u>RECOMMENDATION</u>

For these reasons, the undersigned **FINDS** that the Acting Commissioner's decision is supported by substantial evidence and complies with the applicable law. Therefore, the undersigned **RECOMMENDS** the Acting Commissioner's Motion for Summary Judgment, ECF No. 12, be **GRANTED**, Ms. Everett's Motion for Summary Judgment, ECF No. 10, be **DENIED**, the final decision of the Acting Commissioner be **AFFIRMED**, and this matter be **DISMISSED WITH PREJUDICE.**

## VII. <u>REVIEW PROCEDURE</u>

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of the Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is mailed to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to counsel of record for the parties.

/s/ Lawrence R. Leonard
Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
November 19, 2013

## CLERK'S MAILING CERTIFICATE

A copy of this Report and Recommendation was mailed on this date to the following:

Mr. Robert W. Gillikin II, Esq.
Rutter Mills LLP
160 West Brambleton Avenue
Norfolk, Virginia 23510
Counsel for Plaintiff

Mr. Joel Eric Wilson, Esq.
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Counsel for Defendant

Fernando Galindo
Clerk of the Court

By: R. Simmons
Deputy Clerk
November 20, 2013